*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-260

DECEMBER TERM, 2016

| | |
|---|---|
| In re A.H., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Orange Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 75-10-14 Oejv |
| | |
| | Trial Judge: Howard A. Kalfus |
| | Acting Superior Judge, Specially |
| | Assigned |

In the above-entitled cause, the Clerk will enter:

Father appeals from a family court judgment terminating his parental rights to the minor A.H. He contends: (1) the court violated his due process rights by relying on allegations of sexual abuse that were not part of the Child in Need of Services (CHINS) stipulation or supported by the evidence; (2) the evidence did not support the court's finding of stagnation; and (3) the evidence did not support the court's conclusion that termination of his parental rights was in the child's best interests. We affirm.

A.H. was born in September 2010, and was exposed to several years of neglect, domestic violence, and physical abuse by father before she was removed from the home pursuant to an emergency care order in October 2014, following a violent assault by father that left mother unconscious.[1] Father was arrested, incarcerated, and charged with aggravated domestic assault. He eventually pled guilty to domestic assault and remained incarcerated until January 2016 after serving the maximum sentence. Following the assault in October 2014, mother obtained a relief from abuse order prohibiting father from having any contact with mother or A.H.; the order remains in effect through January 2017.

After her removal from the home, A.H. was placed in foster care for several months until a kinship placement was arranged with mother's stepsister and her family in Lebanon, N.H., where A.H. continues to reside. The parents, who were not married, stipulated to an adjudication of CHINS in January 2015, agreeing that "there was substantial domestic violence in the home, and the parents were unable to protect the child from the effects of that domestic violence."

---

[1] Prior to the incident in October 2014, the Department for Children and Families (DCF) had received earlier reports of severe neglect of A.H., as well as reports that father had engaged in domestic violence and excessive discipline of A.H. In response, DCF provided intensive family home-based services, but father reportedly was "completely disengaged with the program."

The initial disposition plan set forth concurrent goals of reunification and adoption and enumerated a number of parental expectations, including requirements that father obtain appropriate housing suitable for a child, engage in anger management and domestic violence counseling, and undergo mental health and substance abuse assessments and treatment. Father objected to a statement in the plan that he had sexually abused A.H., and the reference was stricken and not repeated in subsequent plans.

In November 2015, more than a year after A.H. came into DCF custody, the State filed petitions to terminate parental rights (TPRs), and the permanency goal was changed to adoption. The change was based on mother's decision to voluntarily terminate her parental rights and father's failure to engage in any form of treatment or programming while incarcerated. Mother voluntarily relinquished her parental rights that month. A hearing on the TPR as to father was held in June 2016.

At the hearing, a Department for Children and Families (DCF) social worker testified that, during father's incarceration, he had not contacted A.H. or returned telephone calls from the social worker. The social worker testified that she had not received any documentation showing that father had engaged in anger management or other programming while in prison. An officer with the Special Investigations Unit of the Orange County Sheriff's Department corroborated the social worker's testimony, confirming that father had not engaged in any programming while incarcerated.

With respect to the case plan goals, the social worker stated that, with the exception of finding employment, father had not made any significant progress since his release from prison. Although father had met with a domestic violence and substance abuse counselor, the counselor's report was that father completely denied that he had ever physically abused mother or exhibited any violent or physically abusive behavior toward A.H. Based on father's unwillingness to take any responsibility for his abusive conduct, the counselor concluded that he was not an appropriate candidate for the Batterer's Intervention Program.[2] The social worker observed that father had failed to acknowledge or address the behaviors that had placed A.H. at risk, as required by the case plan, and believed that father continued to pose a significant risk to A.H.

At the conclusion of the hearing, the trial court entered findings on the record. The court found that, apart from having obtained some employment, father had fallen well short in every category of the case plan. He had seen a counselor but was unwilling to address the issues that led to his incarceration and A.H.'s removal; he had not taken responsibility for the violence inflicted on mother or the abuse, both physical and emotional, inflicted on A.H.; and he had made no

---

[2] The counselor's report, admitted at trial, stated in part as follows: "The domestic violence assessments revealed someone who completely denies ever physically abusing his partner. He reports only raising his voice and using angry expressions or gestures." The report noted that father admitted only that he occasionally "swatted his daughter on the butt" for disciplinary purposes. It concluded that, because father was "unwilling to take responsibility for his abusive behavior towards his daughter or partner . . . he is not an appropriate candidate for and would not be eligible for" a domestic violence program.

2

progress toward developing parenting skills. Accordingly, the court found a significant change of circumstances based on stagnation.

Applying the best-interests-of-the child criteria the court found that father had little or no relationship with A.H. for almost two years; that his prior relationship with A.H. had been marked by domestic violence and physical abuse, and that—given the considerable lack of progress under the case plan—father could not resume parental responsibilities within a reasonable period of time measured from the perspective of the child's need for permanence and stability. The court also noted the evidence that A.H. had bonded with her foster family, who were responsive to her special medical and emotional needs, and was well adjusted to her home and community. Accordingly, the court granted the petition. This appeal followed.

Father first contends that the trial court violated his right to due process "when it terminated [f]ather's rights based on his failure to admit allegations against him that were never proven by competent evidence, and were not a part of any factual stipulation." The claim is based on father's related claim that "[t]he trial court was swayed by the unsupported suggestion and innuendo that [f]ather had sexually abused A.H., when there was no evidence of any sexual abuse." He contends that DCF engaged in "dishonest tactics" and violated his right to due process when it introduced such evidence of sexual abuse because the allegation was not set forth in the CHINS stipulation.

The predicate of the claim is entirely unsupported. Although the social worker testified without objection that DCF had received reports suggesting that father had inappropriately touched the child, the trial court here made no finding in this regard; indeed, the court made no reference whatsoever to the allegations in the findings and conclusions that it entered on the record in support of its decision to terminate parental rights. That decision, as noted, was based in large part on father's failure to acknowledge or address his physical violence toward mother and physical and emotional abuse of A.H., but there was nothing in the court's decision to indicate that it was "swayed" by the reports of alleged sexual abuse, and father cites nothing in the record to suggest otherwise. Accordingly, we find no merit to the claim.

Father next contends that "DCF's [f]abricated charges of 'denial' " were unsupported by the record and insufficient to show stagnation or support a conclusion that father could not resume parental responsibilities within a reasonable period of time. The claim is based on father's assertion that the "only basis" for the court's finding of stagnation was that father remained in a "pre-contemplative stage" of addressing his domestic violence, i.e., that he was not willing to take responsibility for his actions. This was improper, father argues, because "there was no requirement in the case plan" that he do so.

Again the claim is unsupported by the record. First, the trial court recited a number of areas where father had failed to meet the case plan goals as a basis for its finding of stagnation. Indeed, the finding that father refused to acknowledge his violent conduct was related to his additional failure to engage in anger management or domestic violence counseling, and to obtain suitable housing. Although the court acknowledged that father had obtained employment, this was essentially the extent of his progress. There is no support in the record for father's claim that he had "completed anger management" while incarcerated." As noted, two witnesses testified to the

3

contrary.[3]  Additionally, father's argument that he had "enrolled in counseling for domestic violence and substance abuse" after his release from prison fails to acknowledge that he refused to take the fundamental first step by acknowledging any need to be in counseling.

Furthermore, the case plan plainly obligated father to recognize and take responsibility for the actions that had resulted in his incarceration and A.H.'s removal from the home.  It required that he "demonstrate an awareness of how his choices" had impacted A.H.; "acknowledge the choices that he . . . made that have put [A.H.] in harm's way," demonstrate "an ability to make [A.H.'s'] needs paramount by following through with treatment," and "articulate" the changes necessary to resume parental responsibilities.  Accordingly, we find no merit to the claim.

Father also asserts that the evidence failed to support a finding that he was "in denial."  As noted, the trial court found that father had "not taken responsibility, other than [the] guilty plea, for the domestic violence inflicted upon [mother] and the abuse, both emotional and physical, that A.H. experienced and witnessed."  The evidence summarized and discussed earlier amply supported this finding.

Father further claims that the counselor's opinion that father refused to accept responsibility for his violent conduct was based on erroneous information provided to the counselor by the social worker, specifically that father had been convicted of the charge of aggravated assault when, in fact, he was convicted of the lesser offense of domestic assault.  As a result, father asserts that the counselor concluded that father was "in denial because the DCF case worker greatly exaggerated and distorted the facts."  Indeed, father claims that "[t]his fundamental misstatement of the facts involved in the domestic incident . . . became a critical piece in the counselor's later conclusion that father was not succeeding in treatment and formed the basis of the [c]ourt's later determination that [f]ather was not progressing."  Again, however, the claim is unsupported.  The counselor's assessment was based on father's failure to take responsibility for the "severe, ongoing physical abuse" of mother; it was not the result of the social worker's mischaracterization of the specific offense for which father was convicted.

Finally, father claims that the evidence did not support the court's conclusion that termination of his parental rights was in child's best interests.  The basis of the claim is two-fold.  First, he reasserts his earlier claim that the court's findings concerning father's failure to

---

[3] In support of the claim, father cites the following exchange between father's counsel and the social worker during cross-examination:

> Q.  And did you know that he [father] completed anger management when he was incarcerated?
> A.  I know that he had reported that he had, but there was no documentation.

To allege as a factual matter that "father completed anger management training" while incarcerated based solely on this exchange is a rather remarkable stretch.

acknowledge and address his violent conduct was based on false information provided to the domestic-violence counselor. As discussed, the claim lacks merit. Second, father reasserts the claim that it was unfair for the trial court to rely on allegations of sexual misconduct. As noted, however, the court made no findings on this subject, and there is no basis to conclude that it relied on this evidence in its decision. Accordingly, we find no error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice